BRODHEAD (UNITED STATES v.). See Case No. 14,654.

BRODIE (McCOMB v.). See Case No. 8,708.

===

## Case No. 1,919.

BRODIE et al. v. OPHIR SILVER MIN. CO.

[5 Sawy. 608; 4 Fish. Pat. Cas. 137.][1]

Circuit Court, D. California. Oct. 23, 1867.

PATENTS—PRIMA FACIE EVIDENCE THAT PATENTEE WAS FIRST INVENTOR —WHAT PRIOR INVENTION WILL DEFEAT PATENT—DAMAGES FOR INFRINGEMENT OF PATENT—DISCRETION—HOW ESTIMATED WHERE IMPROVEMENT WAS IN USE WHEN PATENT ISSUED.

1. A patent is prima facie evidence that the patentee was the first inventor of the improvement patented, and whoever controverts and denies his claim in this respect has the burden of proof upon him to establish the contrary.

2. The claim of original invention is not defeated by showing the construction of the improvement before the patent issued; to defeat the claim, it must be shown that the construction preceded the invention of the patentee; that is, was before the conception of the improvement was applied in practice.

3. The power to increase the actual damages in cases of infringement of patents being vested in the discretion of the court, should only be exercised to remunerate parties driven to litigation to sustain their patents by wanton and persistent infringement.
[Cited in Welling v. La Bau, 35 Fed. 304.]

4. The improved articles in this case being already in use by the defendant when the patent was issued, the damages against him were to be determined by the value of their subsequent use.

[1] [Syllabus and opinion reported by L. S. B. Sawyer, Esq.; statement by Samuel S. Fisher, Esq.; reprinted by permission.]

[At law. This was an action on the case, tried, upon submission, before Mr. Justice Field, without a jury, to recover damages for the infringement of letters patent for an "improved amalgamating barrel," granted to James Brodie, July 5, 1864.

[The invention consisted in making the wooden lining of amalgamating barrels of blocks of wood, placed so that the fibres of the wood were inside, and exposed to the wear of the ore. The claim was as follows: "The introduction of blocks of wood as a lining into the barrel, the ends or grain of which blocks are presented to the action of the ores being amalgamated therein."] [2]

[This was an action by James Brodie and others against the Ophir Silver Mining Company for the infringement of patent No. 43,462. The jury rendered a verdict for plaintiff.]

P. G. Buchan, for plaintiff.
H. & C. McAllister, for defendant.

FIELD, Circuit Justice. This is an action to recover damages for an alleged infringement of the patent right of the plaintiffs to an improved German barrel for amalgamating gold and silver ores. The improvement consists in lining the barrel with blocks of wood, placed so as to present the end of the fibre to the action of the ore, instead of constructing it as was previously done, in such a way as to bring the wear of the ore directly across the fibre. The durability of the barrel is thus increased, and the expense of its construction is lessened. A barrel thus constructed will last a year, whilst a barrel constructed after the old method will wear out in a few months. The witnesses make the difference in the durability between the two kinds amount to about nine months. The difference in their expense is equally great; that of the new barrel being only about one third of that of the old barrel. The blocks of which the new lining is composed are easily and rapidly cut by machinery.

The conception of the improvement originated with James Brodie, one of the plaintiffs, early in 1862. His attention had been previously directed to the importance of increasing the durability of the lining of the amalgamating barrel; but it does not appear that the mode adopted presented itself to his mind until the summer of 1862, and this mode was not reduced to practice, or at least was not perfected, until the summer of 1863. In November, 1862, he visited Mexico, and whilst there lined barrels as described in his patent, and in July of the following year he transmitted to a friend in San Francisco, a tracing of the improvement, and requested him to file a caveat in the patent office at Washington. His friend neglected to act upon this request, and he himself returned to San Francisco in No-

[2] [From 4 Fish. Pat. Cas. 137.]

vember, 1863, and soon afterwards made application for letters patent. His application was resisted, and letters were not in consequence issued to him until July 5, 1864.

In the meantime, it would appear that the idea of a similar improvement had occurred to others, to Mr. Palmer, the superintendant of the Ophir silver mining company, and to one John S. Brodie, the chief mechanical engineer of that company. Mr. Palmer states that the idea of lining amalgamating barrels with blocks of wood, with the end of the fibre presented to the ore, occurred to him in August, 1863, from reading in the papers of San Francisco accounts of the Nicolson pavement, and that he suggested the construction of a barrel lined in this way, to the engineer. Other witnesses of the defendant attribute the first conception of the improvement to the engineer, and not to Mr. Palmer, whilst one of the witnesses states that the improvement was originally suggested by a workman in the carpenter's shop. However this may be, no attempts were ever made by any of these parties to carry the idea into practice by the construction of new barrels, until December, 1863; and previous to that time, the plaintiff, James Brodie, had completed his improvement and prepared his application for a patent.

The conception of the improvement, as we have stated, first occurred to this plaintiff in 1862, and barrels with the improvement were tested by him as early as April, 1863. This carries the invention to an earlier period than any designated by the witnesses of the defendants. But, independent of this consideration, the patent is prima facie evidence that the patentee was the first inventor. Whoever controverts and denies his claim in this respect has the burden of proof upon him to establish the contrary. This is not accomplished by showing the construction of the improvement before the patent issued; it must be shown that the construction preceded the invention of the patentee; that is, before the conception of the improvement was applied in practice. The only serious question, therefore, relates to the amount of damages to which the plaintiffs are entitled. The evidence shows that twenty-three improved barrels were constructed and used by the defendants after the first of December, 1863. Of these only two were made after the issue of the patent in July, 1864, and there is no evidence that any have been made or used by them since they had notice of the patent. Under all these circumstances, we do not think the case is one for the recovery of any greater damages than such as were actually sustained. The act of congress of July 4, 1836 [5 Stat. 117], does not compel the court to treble the actual damages, as did the act of 1800 [2 Stat. 38]. The power to increase the actual damages now rests in the discretion of the court, to be exercised in view of all the circumstances

of the case. It should only be exercised to remunerate parties who have been driven to litigation to sustain their patents by wanton and persistent infringement. Seymour v. McCormick, 16 How. [57 U. S.] 488.

The actual damages are to be determined by the value of the use of the twenty-three barrels after the patent issued. Twenty-one of these, as we have stated, were constructed in December, 1863, and only two after the patent. The difference in value between the old and improved barrel, upon estimation of the time they respectively last and the expense of their construction, is about two hundred dollars. The twenty-one barrels may be regarded as about half worn out at the time the patent issued. I am of opinion, therefore, that a proper allowance of damages for these twenty-one is one hundred dollars on each, and on the other two barrels two hundred dollars each, making twenty-five hundred dollars in all. Findings in favor of the plaintiffs will therefore be made, and the damages assessed at that amount. Counsel will prepare the findings and present them to the court for settlement.

NOTE [from original report]. Upon a motion for a new trial, the amount was reduced, but the principle upon which the damages were assessed was not affected.