# HULETT *v.* LONG.

PATENTS; INTERFERENCE; PRIORITY OF INVENTION; AMENDMENT.

1. Where by inadvertence a patent is issued to an applicant during the pendency of a prior application by another party for a patent for the same invention, the patentee, in an interference subsequently declared, will be deemed the junior applicant, and, as such, will have upon him the burden of proof.

2. Questions raised in the Patent Office upon a motion by one of the parties to an interference to dissolve the interference upon grounds not relating to priority of invention, are of an interlocutory character, and can not be considered by this court upon an appeal from the decision of the Commissioner of Patents awarding priority to one of the parties to the interference.

3. While an applicant for a patent will not, under the form and guise of an amendment, be allowed to introduce into his application a new and different claim from that originally made, nor change the construction and operation of the invention described in his original application and specifications, he will be allowed by amendment to supply omissions and defects in his original specifications and claims, which have occurred by mistake or inadvertence, or even by want of requisite skill in the preparation and presentation of his case; and an applicant who has been so allowed to amend his application will be entitled, upon an interference being declared, to the benefit of a constructive reduction to practice as of the date

of the filing of his original application, although the declaration of interference embodies a claim in his amended application.

4. As between rival inventors the date of invention may be fixed and will take precedence from the time at which a complete and intelligible embodiment of the subject of the invention is produced and by which those skilled in the art could readily understand it.

No. 127. Patent Appeals. Submitted May 11, 1899. Decided October 4, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. H. A. Seymour* and *Mr. A. W. Bright* for the appellant.

*Mr. E. L. Thurston* and *Mr. Walter F. Rogers* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Patent Office in a case of interference between a patent granted to George H. Hulett and an application for a patent by Timothy Long, relating to a car dumping machine.

The patent to Hulett was granted October 6, 1896, on an application filed October 23, 1895, and the application of Long was filed May 2, 1895, and interference was declared January 22, 1897. The declaration of interference is as follows:

"In a car dumping machine, the combination with a car-dumping mechanism, of an inclining chute, movable bodily up and down vertically, whereby to discharge at the same angle into the hold of a vessel whether it be high or low, and means for elevating the material to be lowered through the chute to discharge into the upper end of the chute, substantially as set forth."

This declaration embodies the sixth claim of the patent

issued to Hulett, and essentially the fifth claim of the application filed by Long.

As will be perceived by the dates above mentioned, Long was the first to file his application in the Patent Office, his application being filed nearly six months before that of Hulett, and his application was pending in the Office when the patent was, by inadvertence, issued to Hulett, on his application, on the 6th of October, 1896. The patent, however, having been issued under such circumstances, does not place Hulett in any different or more advantageous position than that of a mere junior applicant. Long occupies the position of senior party, and the onus of proof is upon Hulett as the junior party to the interference.

Long, in his preliminary statement, alleges that he conceived the invention set forth in the declaration of interference, in or about the month of November, 1890; that he first explained the invention to others in or about the month of May, 1891; that he made sketches showing the invention at or about the same time; and that he made a model of the invention in March or April, 1893, and a drawing of the invention on or about the 2d of August, 1893; but that he had never embodied the invention in a full-sized machine. This statement was made the 16th of February, 1897.

Hulett, in his preliminary statement, avers that he conceived the invention described in the declaration of interference, on or about the 10th of May, 1893, and that at or about the same time, he made drawings of the invention; and that, on or about the 12th of May, 1893, he explained the invention to others, and that he made a model showing such invention on or about the 　　 day of 　　 , 18 　 ; that he embodied his invention in a full-sized machine, which was completed about the 20th of May, 1896, and that on the 25th of May, 1896, the said invention was successfully operated at the Cuddy-Mullin dock in Cleveland, Ohio, and that he has since continued to use the same, and that he is

manufacturing others for use and sale. This statement was made on the 12th of February, 1897.

Each of the parties took testimony in support of their respective preliminary statements; and upon the evidence produced, the decision of the examiner of interferences, the decision of the board of examiners in chief on appeal, and the decision of the Commissioner on appeal, were all in favor of Long, holding that he had constructively reduced the invention to practice by filing his application on the 2d day of May, 1895, and that he was entitled to priority of invention. Hulett has taken this appeal from the decision of the Commissioner.

In his petition for appeal the appellant, Hulett, has assigned no less than twelve reasons upon which he grounds his appeal; and among these he assigns the following, which are of a preliminary nature:

"1st. That the Commissioner erred in refusing to consider the question as to whether Patent No. 560,727, granted to Long, was for the same invention as that involved in this interference, and, if so, whether it is not a statutory bar to the grant of a patent for said invention to Long.

"2d. That the Commissioner erred in holding that this question of statutory bar was an *ex parte* question, and therefore not involved in the interference.

"3d. That the Commissioner erred in declining to consider whether Long's application as filed disclosed the invention in controversy; and,

"4th. That the Commissioner erred in refusing to hold that the subject matter involved in the interference was inserted in Long's application by amendment after the application had been filed in the Patent Office, and subsequent to the application filed by Hulett and upon which his patent issued."

With respect to these questions, it is sufficient to say that they do not arise for consideration on this appeal. The mode of raising these questions in the Patent Office, and of

their determination therein, is specially provided for and prescribed by the Rules of Practice of that Office, Nos. 122, 124, and 126. The proceeding thereunder forms no part of the proceeding on the declaration of interference, the latter proceeding being for the distinct purpose of avoiding the issuance of conflicting and interfering patents. By Rule 126 it is provided that " the examiner of interferences, or the examiners in chief, may, either before, or in their decision on the question of priority, direct the attention of the Commissioner *to any matter not relating to priority,* which may have come to their notice, and which, in their opinion, establishes the fact that no interference exists, or that there has been irregularity in declaring the same, (Rule 122), or which amounts to a statutory bar to the grant of a patent *to either of the parties for the claim or claims in interference.* The Commissioner may, *before judgment on the question of priority, suspend the interference and remand the case to the primary examiner* for his consideration of the matters to which attention has been directed. From the decision of the examiner an appeal may be taken as in other cases. But if the case *shall not be so remanded,* the primary examiner will, *after judgment,* consider any matter affecting the rights of either party to a patent which may have been called to his attention, unless the same shall have been previously disposed of by the Commissioner."

In this case, before any judgment was rendered on the question of priority, Hulett moved that the interference should be dissolved, on the grounds, first, that no interference in fact existed; second, that there had been such irregularity in declaring the same as would preclude the proper determination of the question of priority or originality; and, third, that Long had no right to make the claim; and also that further proceedings should be suspended pending the determination of the motion.

This motion to dissolve was argued before the primary examiner, and, upon full consideration, the motion was

denied by him; and thereupon Hulett appealed to the Commissioner, by whom the ruling of the primary examiner was affirmed. The matter was again brought to the attention of the examiner of interferences, the examiners in chief on appeal, and the Commissioner on appeal, in the proceeding on the declaration of interference, and they all declined to support the contention of the appellant Hulett.

The questions raised upon this motion to dissolve were of an interlocutory character, and did not involve in their determination the question of priority of invention; and from the determination of such questions as those raised by the motion no appeal is allowed to this court. The appeal allowed to this court by the Act of Congress of February 9, 1893, in cases of interference, is for the purpose, and that alone, of having the final decision of the Commissioner of the Patent Office, on the question of priority of invention, reviewed and determined, as that question is contemplated and provided for in section 4904 of the Revised Statutes of the United States, and not for the purpose of having decisions upon collateral or interlocutory questions reviewed and decided. If all such collateral and interlocutory proceedings in the Patent Office were the subjects of appeal to this court, the proceedings for patents might be made almost interminable, to say nothing of the enormous costs that would be incurred in prosecuting and defending against such appeals.

It is also objected, and urged as a serious question in the case, that the application of Long as originally filed did not claim or disclose the subject matter of this interference; that the matter of interference is new matter put into the case by amendments since the original application was filed; and therefore Long has no right to make the claim in issue, and that he can not be given the benefit of a constructive reduction to practice as of the date of filing his original application. The amendments objected to related to some of the details of the machine and the mode of the operation thereof.

15 Ct. App.—20

This question was substantially involved in the motion to dissolve the interference; for, it being alleged as one of the grounds of the motion, that there was, in fact, no interference, and that Long had no right to make the claim involved in the interference as declared, the question was disposed of in denying the motion to dissolve the interference. But we think there is no substantial ground for the contention of the appellant, and especially not on this appeal. The amendments allowed did not disclose a wholly different invention from that claimed in the original application, nor change the construction and operation of an invention that had been fully described and shown, nor did the amendments allowed to be made present a different or preferable form of invention from that originally presented. And while an applicant will not, under the form or guise of amendment, be allowed to introduce into his application a new and different claim to an invention from that originally made, nor to change the construction and operation of an invention which has been fully described and explained in his original application and specification, yet it is a well-settled and long-established practice in the Patent Office to allow amendments to be made, under proper circumstances, to supply omissions and defects in the original specifications and claims as filed, which have occurred by mistake, oversight, or inadvertence, or even in the want of the requisite skill in the preparation and presentation of the case to the Office. And the making of such amendments should not be allowed to operate to the prejudice of the claim or claims of the applicant, if made in due and reasonable time, and in good faith. In many cases the necessity for amendments to supply omissions and defects is not discovered until the application and specification have been subjected to the critical examinations of the experts of the Office; and both the statute law and the Rules of Practice contemplate the making of all necessary amendments and alterations to supply defects and omissions

in the presentation of the case. And where amendments have been allowed, it should be presumed that they were properly allowed, and upon satisfactory showing to the Office that it was by mistake, oversight, inadvertence, or want of sufficient skill in the preparation of the application, that the omission or defects had occurred, and not by design to present a new and essentially different claim to invention from that described in the original application, made for the purpose of overreaching and defeating a rival invention.

The subject of amendment, with its proper limitations, is treated in very clear terms in the case of *Ex parte Snyder*, 22 O. G. 1975 (1882).

In that case it was said by Mr. Commissioner Marble, that, "the applicant will not be permitted, under the guise of an amendment, to introduce into his application a wholly different invention, nor to change the construction and operation of an invention which has been fully described and shown, nor to present a different or preferable form of his invention. He may be permitted, upon proper occasion, to supply suitable connections, to add a spring to a pawl, a handle to a crank, a belt to a pulley, teeth to a wheel, an outlet to a closed receptacle, or other manifest defects or omissions in features essential to the operation of the invention or to the completeness of the disclosure, and which were caused by a clerical error of the draftsman or the unfamiliarity of the inventor with official forms. These amendments, supplemental in their nature, may be made as completing the invention imperfectly shown and described. They add to the invention disclosed some part or feature which agrees with the construction and operation already presented." See, also, *Railway Co.* v. *Sayles*, 97 U. S. 563.

The amendments allowed in the present case would seem to be clearly embraced within the principle and illustrations furnished by the case from which we have quoted. Such amendments as were allowed in this case did not present the

case of new and essentially independent claims to invention, such as were inadmissible under the general power of amendment.

Therefore, Long having the benefit of a constructive reduction to practice of his invention from the time of the filing of his application, the real and only question on this appeal, *inter partes*, is that which relates to the priority of invention.

This question is one of fact, and it has been fully and satisfactorily examined by the several tribunals of the Patent Office. We entirely concur in the conclusions reached by those tribunals, and think that, unless the several witnesses for Long be discredited, and their testimony be entirely disregarded, no other fair conclusion could be supported than that reached and maintained in the Patent Office. That there is some discrepancy, indeed, some positive conflict, between some of the evidence produced on the part of Hulett and that produced on the part of Long, may well be conceded. But we do not find that conflict to be of a character to entirely discredit the witnesses on the part of Long. If there be any real doubt, as to how the comparative weight of the proof stands, the onus of proof being upon Hulett, as the junior party to the interference, that doubt should be resolved in favor of Long. We think the proof in this case is entirely satisfactory to show that Long is entitled to the position of prior inventor of the subject matter of the issue of interference.

It is a well settled principle in the patent law, that, as between competitors or rival inventors, the date of invention may be fixed, and will take precedence from the time at which a complete and intelligible embodiment of the subject of the invention is produced, and by which those skilled in the art could readily understand it. Therefore, on a question of priority of invention, the Supreme Court of the United States, in the well known case of the *Webster Loom Co.* v. *Higgins*, 105 U. S. 580, 594, in discussing the question

of priority of invention, after saying that the question to be determined was simply one of priority of invention, said (speaking by Mr. Justice Bradley):

"Conceding that Davis was an original inventor, the earliest point of time that he can be regarded as such was in the spring of 1868. But Webster had invented it before that time, and had made a drawing of it which, in March, 1868, he exhibited and explained to Davis. An invention relating to machinery may be exhibited either in a drawing or in a model, so as to lay the foundation of a claim to priority, if it be sufficiently plain to enable those skilled in the art to understand it. There is no doubt that Davis understood Webster's drawing; and he did not then claim that the invention belonged to him."

See, also, cases of *Reed* v. *Cutter*, 1 Sto. Cir. Ct. Rep. 590, and *Brodie* v. *Ophir Min. Co.*, 5 Sawy. 608, and same case, 4 Fish. Pat. Cas. 137.

From the testimony taken in the case, it appears that, in the early part of May, 1893, Hulett conceived the invention in issue, and on the 10th or 12th of May, 1893, he made sketches of it, which he has lost. But before losing these drawings, about May 10 or 15, 1893, he explained his invention to John McMyler. This is the limit of the time of the invention as conceived and described by Hulett. He produced a good deal of evidence having reference to subsequent transactions; but none of it varied the time of conception and disclosure as above stated.

On the part of Long, the testimony produced in support of his preliminary statement, being the testimony of himself, corroborated fully and circumstantially by three other witnesses, shows clearly that he conceived and described the invention in issue in the winter of 1890–1891 (in fact, anterior to the date mentioned in the preliminary statement), and that a model was made in the winter of 1891–1892; that a drawing was made on or before August 2, 1893, and explained to various persons on or before that date, and that another

drawing was made in November, 1894. There is no question but that the model and drawing exhibited by Long showed the invention in issue of this interference; nor is there any question as to whether the model and drawings of Long exhibited an intelligible embodiment of the invention, such as would enable those skilled in the art to understand it, and from which to construct an effective machine upon the principle of the invention. There is no question of the want of due diligence in the case; and Long being the first to conceive the invention and giving him the benefit of a constructive reduction to practice as of the date of his application involved in the interference, upon the proof produced, he is entitled to have awarded to him priority of invention. It follows, therefore, that the decision of the Commissioner must be affirmed, and it is so ordered. And the proceedings on this appeal, and this decision, will be certified to the Commissioner of Patents, according to the requirement of the statute.　　　　　　　　　　*Affirmed.*